USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_______________
DATE FILED: 08/25/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

LIZETTE MARTINEZ, *individually and as parent and natural guardian of H.G.M.*,

Plaintiff,

-v-

NEW YORK CITY DEPARTMENT OF EDUCATION and DAVID C. BANKS,

Defendants.

--------------------------------------------------------------------X

24-cv-7226 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

In this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the parties have resolved all issues except for the liability of Defendant the New York City Department of Education ("DOE") for late fees purportedly incurred by Plaintiff Lizette Martinez ("Plaintiff") during the pendency of administrative proceedings.[1] Plaintiff, suing individually and as parent and natural guardian of H.G.M., now moves, pursuant to Federal Rule of Civil Procedure 56, for an order granting her summary judgment and ordering DOE to pay accrued late fees. Dkt. No. 63. Defendants cross-move for an order granting them summary judgment. Dkt. No. 69. This Court now joins the opinions of others in this District and holds that Plaintiff is not entitled to late fees. Plaintiff's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted.

[1] The parties also agree that the question of attorneys' fees for the federal litigation is premature.

## BACKGROUND

### I. The IDEA

The IDEA is intended to ensure "that all children with disabilities have available to them a free and appropriate public education ("FAPE") . . . designed to meet their unique needs and . . . to ensure that the rights of children with disabilities and the parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)–(B). Under the IDEA, states receiving federal special education funding are required to provide a FAPE to children with disabilities. *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014); *see* 20 U.S.C. § 1400(d)(1)(A). "To provide a FAPE to each student with a disability, a school district must develop an [individualized education program or "IEP"] that is reasonably calculated to enable a child to receive educational benefits." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (internal quotation marks omitted). The IEP sets forth "'the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'" *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 507–08 (2d Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)), *opinion amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007). If a parent is dissatisfied with the identification, evaluation, or educational placement of the child, she can pursue relief, initially through administrative processes provided by the state and ultimately in federal court. *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007). "Parents are specifically entitled to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provisions of a free appropriate public education.'" *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (citing 20 U.S.C. § 1415(b)(6)(A)). In New York, parties do so through a two-tier administrative

system that involves in the first instance a hearing before an impartial hearing officer ("IHO") appointed by the local board of education or competent state agency who issues a findings of fact and decision ("FOFD"), and in the second instance review on appeal by a state review officer ("SRO") of the New York Education Department. *Id.*

"'The IDEA contains a stay-put or pendency provision[,] which provides that 'during the pendency of any proceedings,' the child is entitled to 'remain in her then-current educational placement' at public expense.'" *Juca v. Banks*, No. 25-2337, 2026 WL 2435596, at *3 (2d Cir. Aug. 20, 2026) (quoting *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023) (alteration adopted)). "The purpose of the provision is 'to maintain the educational status quo while the parties' dispute is being resolved.'" *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (quoting *T.M.*, 752 F.3d at 152). The IDEA's pendency provision "therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Id.* These proceedings can end up being protracted. *See Mendez*, 65 F.4th at 61. The school district is not required to agree to and pay for the unilateral placement preferred by the parent. Under the *Burlington*/*Carter* test, reimbursement is available only if "(1) the proposed IEP failed to provide the student with an appropriate public education; (2) the parent's private placement was appropriate to the child's needs; and (3) equitable considerations support the parent's claim." *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 215 (2d Cir. 2014). But if the school district has already paid for the student's tuition and related services, it cannot recoup those payments from the parents or the school. "[T]he IDEA does not authorize a school district to recoup payments made for educational services pursuant to the stay-put provision (*i.e.*, pendency services)." *Ventura de*

*Paulino*, 959 F.3d at 531; *see also id.* at 535 (the school district has "no recourse under the IDEA to recoup the sums it expended on the child").

**II. H.G.M.**

H.G.M. is a student who suffers from dysphagia, visual impairments, severe developmental delay, aphasia, cerebral palsy, and is hard of hearing. Dkt. No. 71 ¶ 2. At all times relevant to this action, she was classified as a child "with a disability" as that term is defined under the IDEA. *Id.* ¶ 3. Plaintiff is H.G.M.'s parent and natural guardian. *Id.* ¶ 1.

On January 23, 2023, after having attended a public specialized school, H.G.M. began attending the International Academy for the Brain ("iBRAIN"), where she received all her related services and academic instruction during the 2022-2023 and 2023-2024 school years. *Id.* ¶ 5.

Following H.G.M.'s unilateral placement, on April 12, 2024, Plaintiff filed a Due Process Complaint ("DPC") against DOE bearing IHO case number 271964, seeking, *inter alia*, a finding that DOE failed to provide H.G.M. a FAPE for the 2022-2023 and 2023-2024 school years and that DOE pay H.G.M.'s tuition and related services at iBRAIN as well as special education transportation costs for the period between January 23, 2023 and the end of the 2022-2023 school year as well as for the 2023-2024 school year. *Id.* ¶ 6; Dkt. No. 1-1 at 4.[2] Plaintiff also sought a pendency finding. Dkt. No. 1-1 at 5.

On July 29, 2024, IHO Michele Host issued a FOFD that DOE had failed to offer H.G.M a FAPE for the 2022-2023 and 2023-2024 school years. Dkt. No. 71 ¶¶ 7–8; Dkt. No. 1-1. IHO Host also found that iBRAIN was an appropriate unilateral placement for H.G.M. and that, under the *Burlington*/*Carter* test, equitable considerations weighed in favor of Plaintiff's request for

[2] Citations to this docket entry use ECF pagination.

full funding and direct funding of iBRAIN tuition and special transportation services for H.G.M. Dkt. No. 71 ¶ 9. IHO Host stated that H.G.M. was "entitled to an award for tuition funding for . . . attendance at [iBRAIN] for the portion of the 2022-2023 school year that [H.G.M.] attended [iBRAIN], as well as the 2023-2024 extended school year, to be paid directly to [iBRAIN]." Dkt. No. 1-1 at 20. The IHO also ordered that DOE directly fund H.G.M.'s transportation to and from iBRAIN. *Id.* at 25. The FOFD ordered that DOE directly fund H.G.M.'s tuition and supplemental fees at iBRAIN for the 2022-2023 and 2023-2024 school years as well as special education transportation "within 30 days of receiving appropriate invoices." *Id.* at 26. DOE did not appeal the July 29, 2024 FOFD.

On July 10, 2024, while Case No. 271964 was still pending before the IHO, Plaintiff filed a second DPC against DOE, bearing IHO Case No. 278155, for the 2024-2025 school year. Dkt. No. 71 ¶ 13; Dkt. No. 1-3. Plaintiff alleged that DOE's proposed IEP, which designated a District 75 public school as H.G.M.'s placement, failed to provide H.G.M. a FAPE for the 2024-2025 school year. Dkt. No. 71 ¶ 13. Among other relief, Plaintiff sought an interim order of pendency, determining that H.G.M. had pendency at her "last-agreed-upon placement," *i.e.* at iBRAIN, and that DOE make direct payment to iBRAIN for the cost of tuition and supplemental services and to the transportation company designated by Plaintiff for the cost of transportation services through the end of the 2024-2025 school year. Dkt. No. 1-3 at 3–4[3]; Dkt. No. 71 ¶¶ 14–15.

On August 16, 2024, IHO Elizabeth Rieser-Murphy conducted a pendency hearing in IHO Case No. 278155. Dkt. No. 71 ¶ 16. Both parties agreed that IHO Host's FOFD dated July 29, 2024, in IHO Case No. 271964, was the legal basis of H.G.M.'s pendency throughout the

[3] Citations to this docket entry use ECF pagination.

administrative and judicial proceedings relative to Plaintiff's DPC for the 2024-2025 school year. *Id.*

On August 27, 2024, in IHO Case No. 278155, IHO Rieser-Murphy issued a pendency order based on IHO Host's July 29, 2024 FOFD. Dkt. No. 1-4; Dkt. No. 71 ¶ 17. The pendency order found that H.G.M. had pendency at iBRAIN and directed that DOE pay tuition to iBRAIN and specialized transportation services, retroactive to the date of the filing of the DPC and continuing until the conclusion of the case. Dkt. No. 1-4.

**PROCEDURAL HISTORY**

Plaintiff filed this lawsuit against DOE on September 24, 2024. Dkt. No. 1. The complaint seeks to enforce the FOFD in Case No. 271964 for the 2022-2023 and 2023-2024 school years, as well as a declaratory judgment that H.G.M.'s pendency placement for the 2024-2025 school year is iBRAIN and an order that Defendants fund her pendency. *Id.* ¶ 1. Plaintiff complained that DOE had not funded H.G.M.'s 2022-2023 and 2023-2024 tuition or special transportation services as ordered by IHO Host in the FOFD. *Id.* ¶¶ 58–59. Plaintiff further complained that DOE had not funded H.G.M.'s 2024-2025 tuition or special transportation services as ordered under IHO Rieser-Murphy's pendency order. *Id.* ¶¶ 96–97. As relief, Plaintiff sought: (1) an order requiring DOE to fully fund H.G.M.'s tuition and special transportation services for the 2022-2023 and 2023-2024 school years in compliance with the FOFD in IHO Case No. 271964; and (2) judgment declaring that H.G.M.'s pendency placement was at iBRAIN for the 2024-2025 school year, and that DOE provide funding for tuition at iBRAIN and all related services, including special transportation. *Id.* at 24.

In the interim between the filing of the complaint and the filing of the instant motion for summary judgment, the parties have resolved many of the issues between them. The parties have resolved the issue of funding pursuant to IHO Host's FOFD for the 2022-2023 and 2023-

2024 school years. Shortly after filing the complaint, on October 15, 2024, Plaintiff filed a motion for a preliminary injunction seeking an order that DOE fund H.G.M.'s tuition and transportation services for all three school years. Dkt. Nos. 6–8. Defendant thereafter funded H.G.M.'s tuition for the 2022-2023 and 2023-2024 school years and Plaintiff withdrew its motion for injunctive relief. Dkt. No. 15.

The parties have also resolved the issue of payment for tuition and special transportation services for the 2024-2025 school year pursuant to IHO Rieser-Murphy's pendency order. On January 30, 2025, Plaintiff filed a motion for summary judgment, seeking an order that Defendants fund H.G.M.'s private school and related service providers, including transportation, as well as any late fees incurred as a result of Defendants' failure to make timely payments under their pendency obligation, for the 2024-2025 extended school year. Dkt. No. 24. That motion was substantially resolved, however, when Defendants paid H.G.M.'s tuition and transportation services for the 2024-2025 extended school year, leaving only the issue of late fees and attorneys' fees. Dkt. No. 56. The parties further agreed that Plaintiff was the prevailing party with respect to IHO Case No. 271964 involving the 2022-2023 and 2023-2024 extended school years, that Plaintiff did not seek attorneys' fees with respect to IHO Case No. 278155, and that the motion with respect to attorneys' fees in the federal proceeding was premature. *Id.*

On November 21, 2025, Plaintiff filed this motion for summary judgment directed solely as to the issue of late fees in connection with the pendency placement for the 2024-2025 extended school year. Dkt. No. 63.[4] Plaintiff also filed a memorandum of law, a Rule 56.1

[4] At the time of Plaintiff's motion for summary judgment, DOE had not paid outstanding pendency transportation costs. Dkt. No. 64 at 1, 12–14 (seeking summary judgment with respect to Defendants' failure to "completely fund[] transportation for the second half of the 2024-25 school year"); *see also* Dkt. No. 66 ¶ 16 (asserting that "$59,207.11 remain outstanding, in principal, late fees, and interest" under the transportation contract Plaintiff entered into for

statement, and the declaration of Arthur Mielnik in support of the motion. Dkt. Nos. 64–66. Defendants filed their cross-motion for summary judgment on December 19, 2025. Dkt. No. 69. They also filed a memorandum of law, the declaration of Sapna Kapoor, their response to Plaintiff's Rule 56.1 statement, and a Rule 56.1 statement in opposition to Plaintiff's motion and in support of their cross-motion. Dkt. Nos. 68, 70–72. On January 19, 2026, Plaintiff filed a memorandum of law in opposition to Defendants' cross-motion for summary judgment and in further support of its motion for summary judgment, as well as its response to Defendants' Rule 56.1 statement. Dkt. Nos. 74–75. On February 6, 2026, Defendants filed a reply memorandum of law in further support of their cross-motion for summary judgment and in opposition to Plaintiff's motion for summary judgment. Dkt. No. 76.

**DISCUSSION**

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under

---

H.G.M.'s transportation services). The parties agree that DOE has since paid the principal amounts owed for tuition and transportation services. Dkt. No. 75 ¶ 13 ("In accordance with pendency, the DOE's Impartial Hearing Implementation Unit[] ('IHOIU') has paid $245,593.14 towards the student's pendency tuition and $216,240.31 towards the student's pendency transportation through the conclusion of the 2024-2025 school year."); *see* Dkt. No. 68 ¶ 7 (stating that DOE had paid $197,824.23 towards H.G.M.'s transportation costs for the 2024-2025 school year pursuant to pendency as of April 2025 and that DOE processed the remaining $18,416.08 owed on December 19, 2025). Plaintiff subsequently clarified in its opposition to Defendants' cross-motion for summary judgment that Plaintiff now only seeks payment of outstanding late fees and interest accrued as a result of DOE's failure to pay the tuition and transportation services owed as pendency in a timely manner. Dkt. No. 74 at 1. To the extent that the complaint sought an order requiring Defendants to fund H.G.M.'s tuition at iBRAIN and special transportation services, that claim is therefore moot. *Juca*, 2026 WL 2435596, at *3 ("It is well settled that a claim becomes moot when a claimant gets everything she could have gotten on that claim."); *Chaperon v. Banks*, 2025 WL 2207908, at *7 (S.D.N.Y. Aug. 4, 2025); *Thomas v. Banks*, 2026 WL 100753, at *3 (S.D.N.Y. Jan. 14, 2026); *Davis v. Aviles-Ramos*, 2026 WL 44725, at *2–3 (S.D.N.Y. Jan. 7, 2026).

the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).

In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to [the non-moving party]," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).[5]

---

[5] A different standard applies when the court reviews an administrative decision in the IDEA context. *See S.S. v. N.Y.C. Dep't of Educ.*, 2026 WL 636850, at *4 (S.D.N.Y. Mar. 6, 2026) (where parties in substance appeal an administrative decision, "adjudicating an IDEA case at summary judgment 'involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions'") (quoting *R.E. v.*

Plaintiff seeks summary judgment, ordering DOE to pay late fees and interest accruing to iBRAIN and to Sisters Travel and Transportation Services, Plaintiff's designated transportation services provider, for the 2024-2025 school year. Plaintiff argues that the "untimeliness of the DOE's payment [for tuition and transportation services] has resulted in the accrual of late fees and interest under the relevant and binding tuition agreement and transportation agreement," Dkt. No. 64 at 14, and that DOE is required to pay the late fees and interest under those contracts because they were "foreseeable, known to the DOE, and result from the DOE's persistent delays in funding the students' pendency placement.," *id.* at 15. Plaintiff further suggests that Plaintiff's contractual obligations under the agreements with iBRAIN and the transportation company "align with the FOFD for the 2022-2023 and 2023-2024 school years, requiring the DOE to fund tuition and transportation 'within 30 days.'" *Id.* at 16. Defendants respond that DOE's payment obligations are limited to the plain text of the controlling order, not the language set forth in Plaintiff's contractual agreements with service providers to which Defendants are not a party, and that the pendency order does not require the payment of late fees or interest. Dkt. No. 70 at 4, 7–9. Defendants also argue that the late fees are "untethered to legitimate educational expenses," *id.* at 9, that the contractual obligation to pay the late fees is illusory, *id.* at 10–12, and that the late-fee provision is unenforceable as against public policy, *id.* at 12–14.[6]

---

*N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012)); *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (explaining that the court must "engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence") (internal quotation marks omitted). Because the parties do not seek review of an administrative decision but Plaintiff seeks only to enforce an uncontested pendency order, the ordinary Rule 56 standard applies. *See Chaperon*, 2025 WL 2207908, at *5 n.2.

[6] Defendants also raise arguments with respect to exhaustion and standing. Defendants first assert, citing *Chaperon*, 2025 WL 2207908, at *22, that Plaintiff failed to exhaust administrative remedies by not making a request for late fees in its DPC or otherwise raising the issue of late fees during the course of the administrative proceedings. Dkt. No. 70 at 6–7. But because

The obligation of DOE to pay late fees and accrued interest to iBRAIN and Sisters Travel and Transportation Services for educational and special transportation services provided during pendency is by now well-trodden ground in this District. DOE is not required "to automatically *fast-track* funding for . . . educational placements" or "to circumvent its ordinary payment procedures." *Mendez*, 65 F.4th at 63; *see also Juca*, 2026 WL 2435596, at *4. "The DOE receives thousands of funding requests under the IDEA at the start of each school year and spends hundreds of millions of dollars annually to fund placements." *Mendez*, 65 F.4th at 63. It is entitled to take "some amount of time to process and pay submitted invoices," including "to implement basic budgetary oversight measures, such as requiring receipts before reimbursement." *Id*. "[T]he IDEA's stay-put provision does not create an entitlement to immediate payment or reimbursement." *Id.*[7]

---

Plaintiff has already obtained a full and binding pendency order, which neither party has appealed, and seeks only to enforce it, the only relevant question is whether the order can reasonably be read to encompass late fees—which the Court determines it cannot. Nothing in the exhaustion doctrine prevents the Court from addressing that question. With respect to standing, Defendants argue that the contracts contain payment provisions which are "designed to exclude Plaintiff from any and all payment obligations, and which instead shift those obligations to the DOE," and are therefore illusory. Dkt. No. 70 at 10–12. Putting aside whether iBRAIN or Sisters have ever sought to enforce these contracts against parents, the contracts by their terms place the obligation to pay upon Plaintiff. The transportation contract, for example, suspends payment obligations until a pendency order is entered obligating a third party (here, DOE) to fund the transportation fees. Dkt. No. 7-4 § 6. Once the pendency order is entered and the suspension lifted, payment is then due at a minimum of thirty-seven (37) days later. *Id.* (providing that payments "will become immediately due" and "shall be paid within thirty (30) days of the interim or final decision" and that late payment penalties shall be applied "[u]pon the failure to pay in full any payment obligation due . . . within seven (7) business days of the due date for such payment"); *see also* Dkt. No. 7-1 § 8 (providing same with respect to iBRAIN tuition payment obligations). The only counterparty to the contracts is Plaintiff; the payment obligations they impose cannot be shifted to and borne by DOE.

[7] Plaintiff notes that DOE made payments for H.G.M.'s tuition and transportation services for the 2024-2025 school year three months after the first installments were due and four to six months after the second installments were due. *See* Dkt. No. 64 at 20 (first tuition installment due on July 10, 2024 and paid in full on October 10, 2024); *id.* (second tuition installment due on September 5, 2024 and paid in full on January 17, 2025); *id.* at 21 (first transportation payment

Moreover, the sole source of DOE's reimbursement obligations "is the applicable administrative order." *Davis v. Banks*, 2023 WL 5917659, at *4 (S.D.N.Y. Sept. 11, 2023) (citing *Ventura de Paulino*, 959 F.3d at 532 and *Mendez*, 65 F.4th at 61); *Davis v. Aviles-Ramos*, 2026 WL 44725, at *3 (S.D.N.Y. Jan. 7, 2026). Plaintiff's agreements with service providers are not contracts to which DOE is even a party. *Davis*, 2023 WL 5917659, at *4. "It follows that the existence and extent of the DOE's reimbursement obligation turns on the language of the applicable administrative order—in particular, on the most recent, operative order, also known as the 'last pendency-setting event.'" *Id.* (quoting *Araujo v. N.Y.C. Dep't of Educ.*, 2023 WL 5097982, at *5 (S.D.N.Y. Aug. 9, 2023)).

The courts in this District thus have uniformly rejected the requests of iBRAIN parents for reimbursement of late fees and accrued interest during the period of pendency. *See Chaperon v. Banks*, 2025 WL 2207908, at *8–9 (S.D.N.Y. Aug. 4, 2025) (Vargas, J.); *Thomas*, 2026 WL 100753, at *3–4 (Rochon, J.); *Davis*, 2026 WL 44725, at *3–5 (Failla, J.); *Moonsammy v. Aviles-Ramos*, 2026 WL 2225066, at *5 (S.D.N.Y. July 31, 2026) (Torres, J.); *Garzon v. Aviles-Ramos*, 2026 WL 1623049, at *4 (S.D.N.Y. June 5, 2026) (Koeltl, J.); *Beckford v. Aviles-Ramos*, 2025 WL 2781539, at *4 (S.D.N.Y. Sept. 30, 2025) (Garnett, J.); *Crespo v. Aviles-Ramos*, 2025 WL 3674707, at *3–4 (S.D.N.Y. Dec. 18, 2025) (Vargas, J.).

There is no reason for this Court to depart from the well-reasoned opinions of its colleagues. IHO Rieser-Murphy's pendency order required DOE to pay tuition and fees for

---

due July 10, 2024 and paid in full on October 17, 2024); *id.* (second transportation payment due September 1, 2024 and paid in full on March 4, 2025). Plaintiff has not established that this schedule is inconsistent with DOE's ordinary payment procedures. Nor has Plaintiff made a showing that "a delay in payment had placed the student's placement at iBRAIN at risk" such that requiring DOE to "circumvent its ordinary payment procedures" would be appropriate. *Crespo v. Aviles-Ramos*, 2025 WL 3022389, at *8 (S.D.N.Y. Oct. 29, 2025).

specialized transportation services. Dkt. No. 1-4. It did not require DOE to pay late fees or interest. Indeed, the DPC for Case No. 278155 requested that DOE provide "[f]unding for the cost of tuition, and supplemental services, where applicable," and "[f]unding for transportation services, as well as all services necessary to said transportation," Dkt. No. 1-3 at 3, and was silent with respect to late fees and accrued interest.

Plaintiff argues that the pendency order for the 2024-2025 school year "derives from" the FOFD for the 2022-2023 and 2023-2024 school years, which requires that DOE fund tuition and transportation "within 30 days," and therefore "the same payment timelines and obligations apply" to the 2024-2025 pendency order. Dkt. No. 64 at 16. The 2024-2025 pendency order states that "[t]he Student's pendency program is based upon . . . Un-appealed Findings of Fact and Decision Case No. 271964 Dated 07/29/2024." Dkt. No. 1-4. Though DOE may have agreed that the FOFD in Case No. 271964 supplies the basis for H.G.M.'s pendency placement at iBRAIN, it does not follow that DOE is therefore bound to any payment timelines set forth in that FOFD which governs wholly different school years. *See Davis*, 2023 WL 5917659, at *4 ("[T]he sole source of the DOE's reimbursement obligations in each Plaintiff's case is the applicable administrative order."); *Mendez v. Aviles-Ramos*, 2025 WL 2793755, at *5 (S.D.N.Y. Oct. 1, 2025), *reconsideration denied*, 2025 WL 2962007 (S.D.N.Y. Oct. 20, 2025) (recognizing same); *see also Polanco v. Carranza*, 2024 WL 4354861, at *7 (S.D.N.Y. Sept. 27, 2024) (holding that "Plaintiff simply cannot rely on [an interim pendency order] relating to an *earlier* academic year to establish [their child's] pendency"); *Donohue v. Samuels*, 2026 WL 2453562, at *13 (S.D.N.Y. Aug. 21, 2026) (adopting *Polanco*'s reasoning and casting doubt on proposition that "an IHO's pendency order can serve as the basis for future pendency"). Defendants have discharged their obligations under the pendency order for the 2024-2025 school year.

Plaintiff would have DOE pay iBRAIN and Sisters Travel and Transportation Services for all amounts due under Plaintiff's respective contracts with those entities. Plaintiff's contract with iBRAIN for the 2024-2025 extended school year required the payment of a base tuition of $213,000, plus a supplemental tuition fee of $124,124.20, for a total of $337,124.20, in three installments: (1) a first payment of $57,447.17 due by July 2, 2024; (2) a second installment of $107,335.51 due by September 5, 2024; and (3) a third installment of $172,341.52 due by January 2, 2025. Dkt. No. 7-1 §§ 5–7. It contains the following provision with respect to late fees:

> c. Late Payment Penalty. Upon the failure to pay in full any payment obligation due based on the terms of this Enrollment Contract ("Amount Outstanding) within seven (7) business days of the due date for such payment, a late payment penalty of ten percent (10.0%) of the Amount Outstanding (the "Late Payment Amount") shall immediately be added to the Amount Outstanding. The imposition of the Late Payment Amount shall be in addition to any other rights and remedies of iBRAIN under this Agreement. Any balances of any amount which remains unpaid, i.e., Amount Outstanding, including any Late Payment Amount, more than thirty (30) days after it is due shall accrue interest until paid at the rate equal to the lesser of two percent (2.0%) per calendar month or the maximum amount allowed under Applicable Law. However, in no event shall this interest provision be construed as a grant of permission for payment delays.

*Id.* § 8(c).[8]

Plaintiff's contract with Sisters Travel and Transportation Services establishes a fee of $220,993.00 to be paid in three installments: $36,832.25 due on July 2, 2024, $73,664.25 due on September 1, 2024, and $110,496.50 due on January 1, 2025. Dkt. No. 7-4 § 6. It provides the following with respect to a late penalty:

---

[8] The agreement also contains a number of provisions relieving the parents from having to pay such sums. For example, in the event that the parents seek and are denied a pendency order requiring funding by the local school district, the contract allows the parents to "immediately withdraw Student from iBrain by terminating this contract per Section 11 within 30 days of receipt of the Order on Pendency." *Id.* § 8(b). Parents can also immediately terminate the contract if the FOFD denies all or part of the full tuition funding from the local school district. *Id.* § 9.

> Late Payment Penalty. Upon the failure to pay in full any payment obligation due based on the terms of this AGREEMENT ("Amount Outstanding") within seven (7) business days of the due date for such payment, a late payment penalty of ten percent (10%) of the Amount Outstanding (the "Late Payment Amount") shall immediately be added to the Amount Outstanding. The imposition of the Late Payment Amount shall be in addition to any other rights and remedies of PROVIDER under this AGREEMENT. Any balances of any amount which remains unpaid, i.e., Amount Outstanding, including any Late Payment Amount, more than thirty (30) days after it is due shall accrue interest until paid at the rate equal to the lesser or two percent (2.0%) per calendar month or the maximum amount allowed under Applicable Law. However, in no event shall this interest provision be construed as a grant of permission for payment delays.

*Id.* § 6.

The contracts clearly demarcate tuition and transportation services from late fees and accrued interest. DOE's sole obligation was under the pendency order and with respect to tuition and transportation services under the pendency order; it was not under the service provider contracts and with respect to items not mentioned in the pendency order. *Davis*, 2023 WL 5917659, at *4.

Indeed, under Plaintiff's view of the law, DOE would have been obligated to advance Plaintiff's tuition payments and would have been liable for late fees even before it had been ordered to make them pursuant to the pendency order. Plaintiff's first payments to iBRAIN and to Sisters Travel and Transportation Services were due on July 2, 2024. Late fees started to accrue seven days later. But Plaintiff's DPC in Case No. 278155 was not filed until July 10, 2024, and the pendency order was not issued until August 27, 2024.

"[U]nder IDEA, DOE is only required to pay pendency tuition retroactively, not prospectively." *Chaperon*, 2025 WL 2207908, at *9. "As *Chaperon* pointed out, the Second Circuit has held that courts 'do not have jurisdiction to order Defendants to prospectively pay tuition that, depending upon the outcome and timing of the underlying administrative proceedings, may never be due and owing.'" *Davis*, 2026 WL 44725, at *5 (quoting *Chaperon*,

2025 WL 2207908, at *9). "If this is the case, 'then a private contract between parents and the private school, to which DOE is not a party, cannot serve to alter DOE's legal obligations under IDEA to require prospective payments or risk substantial financial penalties.'" *Id.* (quoting *Chaperon*, 2025 WL 2207908, at *9). In other words, "[i]f Defendants have no obligation to pay for tuition prospectively, they cannot be held liable for late fees associated with a failure to pay prospectively, particularly when those fees are separate and apart from the costs of tuition (or, in this case, transportation) itself, and are set forth in a private contract to which DOE is not a party." *Mondano v. Banks*, 2026 WL 573379, at *3 (S.D.N.Y. Mar. 2, 2026).

Finally, this case is distinguishable from *Mendez*, 2025 WL 2793755, at *6, on which Plaintiff relies, *see* Dkt. No. 64 at 18. As Judge McMahon pointed out in distinguishing *Chaperon*, the question in *Mendez* was the obligation to pay pursuant to a merits-based reimbursement claim and did not involve "a pendency order and a prospective request for the payment of late fees." *Id.* at *6. "[W]hether a plaintiff is entitled to reimbursement on pendency 'is complexly independent from' whether a claim for reimbursement for the same succeeds on the merits." *Id.* (quoting *Bd. of Educ. of Poughkeepsie City Sch. Dist. v. O'Shea*, 353 F. Supp. 2d 449, 457 n.11 (S.D.N.Y. 2005)). Moreover, the order there was broader than the order here, requiring DOE to fund transportation services "at the contracted rate for the 2024-2025 school year." *Id.* at *5, *7 (holding that the "contracted rate" language "is most naturally read to require payment of the full contractual amount" and that DOE was thus "required to reimburse for late fees and interest because the plaintiff signed a contract that obligate[d] her to pay for those amounts, if incurred"); *see also Davis*, 2026 WL 44725, at *5 (distinguishing *Mendez*).[9]

[9] Plaintiff also relies upon *JP ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 641 F. Supp. 2d 499 (E.D. Va. 2009) as support for the proposition that "the court has broad discretion to award appropriate relief" in IDEA cases, including interest. *See* Dkt. No. 64 at 18. Not only

**CONCLUSION**

For the reasons stated, Plaintiff's motion for summary judgment is DENIED and Defendants' cross-motion for summary judgment is GRANTED. The parties shall meet and confer and submit a letter by one week from today indicating whether final judgment may be entered and this case closed.

The Clerk of Court is respectfully directed to close Dkt. Nos. 63, 67, and 69.

SO ORDERED.

Dated: August 25, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge

is that case not binding on the Court, but the dispute did not involve a pendency order—only whether the public school system was obligated to reimburse parents for the cost of enrolling their child at a private school when the court found that the public school had not provided a FAPE to that child. *Id.* at 506. Moreover, the fact that the *JP* plaintiffs were entitled to a reasonable interest rate as compensation for tuition payments they personally made with their credit cards has no bearing on the circumstances at issue here, where Plaintiff seeks interest accrued from purportedly late payments made by DOE.